UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARRAD BEARD, | Case No. 1:17-cv-00497-JDP (HC) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ECF No. 1 |
| JOHN SUTTON, | |
| Respondent. | |

Petitioner Jarrad Beard, a state prisoner without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. For the following reasons, we deny the petition.

**I.  Background**

Petitioner was charged with two counts of murder and one count of shooting an occupied vehicle. He pleaded not guilty and proceeded to trial, alongside his brother Jerry Beard. A jury found petitioner guilty of grossly negligent discharge of a firearm and two counts of voluntary manslaughter. Petitioner was sentenced to a prison term of 34 years.

We set forth below the facts of the underlying offenses, as stated by the California Court of Appeal, Fifth District ("Court of Appeal").[1] A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015). All alterations come from the Court of Appeal's opinion.

> The underlying incident occurred in northwest Fresno on December 20, 2011. Jarrad Beard, then age 19, spent part of the day at his mother's house smoking marijuana and playing video games with his brothers, Jerry (age 15) and Jarett (age 14), and a friend of theirs named Adam Frisby (age 16). At some point in the

1

late afternoon or early evening, the group walked to a convenience store located near the corner of Herndon and Polk Avenues to purchase "wraps" for rolling marijuana cigarettes. In preparation for this errand, Jarrad and Jerry armed themselves with two handguns: a .45-caliber Colt Commander and a nine-millimeter (9mm) Imez Makarov.

After purchasing items from the store, Jarrad and his companions started to walk back home. While crossing Herndon Avenue, the boys exchanged unfriendly looks with a group of strangers in a pickup truck stopped at a traffic light. The driver of the truck was 18-year-old Justin Hesketh. Mr. Hesketh was accompanied by passengers Brandon Moore (age 16) and Sawyer Drehman (age 15).

When Jarrad reached the other side of the street, he fired a shot at Mr. Hesketh's vehicle with one of his guns, hitting the front left tire and causing it to deflate. Mr. Hesketh and Mr. Moore subsequently exited the truck and chased Jarrad and his group into a nearby apartment complex. Sawyer Drehman stayed behind with the vehicle. A confrontation ensued inside of the complex and ended with Mr. Hesketh and Mr. Moore being killed by gunfire. Justin Hesketh sustained three bullet wounds to his neck and chest. Brandon Moore was shot four times; once in the chest, once in the thigh, and once in each arm. Jarrad Beard later confessed to shooting the victims with his Colt .45. Jerry Beard admitted to firing a single shot from the 9mm pistol.

Appellants were each charged with two counts of murder (§ 187, subd. (a)) in an information filed by the Fresno County District Attorney. Jarrad was further charged with one count of shooting at an occupied vehicle (§ 246). The information contained multiple-murder special circumstance allegations (§ 190, subd. (a)(3)) and enhancement allegations under section 12022.53, subdivision (d) for personal and intentional discharge of a firearm causing great bodily injury or death. Jerry was prosecuted as an adult pursuant to Welfare and Institutions Code section 707, subdivision (d)(2). The case went to trial in October 2012.

The prosecution's case-in-chief established the information summarized above. Forensic evidence indicated that most of the victims' wounds had been caused by the higher caliber weapon used by Jarrad. Accepting as true Jerry's statement that he fired the 9mm pistol one time, the prosecution argued his shot was responsible for the bullet that struck Justin Hesketh in the neck. The basic facts were uncontroverted, but there were conflicting accounts regarding whom among the parties had acted as the initial aggressor. According to Sawyer Drehman, the victims made no

---

[1] The Court of Appeal considered both petitioner's and his brother's appeal together in this opinion, thus both Jerry and Jarrad Beard are called appellants. Only the petition of Jarrad Beard is before the court on habeas review.

2

attempt to confront or pursue the defendants until after Jarrad had fired a bullet into the front tire of their vehicle. Sawyer testified that the truck was about to proceed southbound on Polk Avenue when suddenly they heard a loud "bang" and Justin Hesketh said, "They threw something at the car." Mr. Hesketh then made a U-turn and parked on the side of the road. The prosecution theorized that neither victim realized the Beard brothers were armed until they caught up with them inside of the apartment complex. Jarrad claimed he shot at the truck only after it became apparent the driver intended to make a U-turn in his direction. He explained: "I was thinking, because if they coming towards us, they doing something funny." Jarrad waited until he had "a clear shot of the tire," then took aim and fired. His reasoning at the time was that shooting out the tire would "slow them down in traffic." Another point of contention was the victims' alleged use of a racial epithet. A resident of the apartment complex testified to seeing Jerry and another boy running from the victims and hearing Brandon Moore say, "Get back here you little fucker." Jarrad claimed one or both of the victims had yelled something to the effect of, "Get over here you fuckin' nigger…we're fixin' [to] kill you."

The defense case relied heavily on evidence which showed Justin Hesketh and Brandon Moore were under the influence of methamphetamine at the time of their deaths. Two expert witnesses were called to testify about the likely effects of the drug at the levels found in the decedents' systems. It was also revealed that Mr. Hesketh had been in possession of what is colloquially known as a "fistpack." The four-inch piece of metal, when clenched in a person's fist, would have hardened the impact of a punch.

Testifying in his own defense, Jarrad explained that he had obtained and carried his guns for self-defense purposes. He purchased the 9mm Makarov from an acquaintance in late November or early December 2011 after being attacked outside of his girlfriend's apartment in an unrelated incident. Jarrad acquired the Colt .45 just hours before the shootings of Justin Hesketh and Brandon Moore after he convinced its previous owner to trade him the gun for a half ounce of marijuana and approximately $30 in cash.

As for the actual shootings, Jarrad described coming face-to-face with the victims and brandishing his weapon so they could see it, while at the same time running backwards and demanding that they "back up." When the men continued to move towards him, he opened fire. Once the shooting was over, Jarrad and Jerry returned to their mother's house, cleaned themselves up, and resumed their activities of earlier in the day, i.e., smoking marijuana and playing videogames.

The jury acquitted appellants of all crimes charged in the information. Jarrad was convicted of two counts of voluntary manslaughter as a lesser included offense of murder, and of grossly negligent discharge of a firearm (§ 246.3) as a lesser included

> offense of willfully discharging a firearm at an occupied vehicle. He was found to have personally used a firearm within the meaning of section 12022.5, subdivision (a) during commission of the voluntary manslaughter offenses. Jerry Beard was convicted of voluntary manslaughter only in relation to the death of Justin Hesketh, and was also found to have violated section 12022.5, subdivision (a).
>
> The trial court sentenced Jarrad to a total of 34 years in prison and imposed various fines and fees. His sentence was calculated as follows: As to count 1, voluntary manslaughter of Justin Hesketh, the aggravated term of 11 years plus the aggravated term of 10 years for the section 12022.5 firearm enhancement. As to count 2, voluntary manslaughter of Brandon Moore, the aggravated term of 11 years plus 16 months for the related firearm enhancement (representing one-third of the middle term), to be served consecutive to the terms imposed under count 1. As to count 3, grossly negligent discharge of a firearm, a consecutive term of 8 months (representing one-third of the middle term).

*People v. Beard*, Nos. F066422, F066548, 2015 WL 5682328, at *1-3 (Cal. Ct. App. Sept. 28, 2015).

## II. Discussion

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See* § 2254; *Harrington v. Richter*, 562 U.S. 86, 97 (2011). To decide a Section 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court reviews the state court's decision under the deferential standard of Section 2254(d). Section 2254(d) precludes a federal court from granting habeas relief unless a state court's decision is (1) contrary to clearly established federal law, (2) a result of an unreasonable application of such law, or (3) based on an unreasonable determination of facts. *See* § 2254(d); *Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018). A state court's decision is contrary to clearly established federal law if it reaches a conclusion "opposite to" a holding of the United

4

States Supreme Court or a conclusion that differs from the Supreme Court's precedent on "materially indistinguishable facts." *Soto v. Ryan*, 760 F.3d 947, 957 (9th Cir. 2014) (citation omitted). The state court's decision unreasonably applies clearly established federal law when the decision has "no reasonable basis." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011). An unreasonable determination of facts occurs when a federal court is "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Loher v. Thomas*, 825 F.3d 1103, 1112 (9th Cir. 2016). A federal habeas court has an obligation to consider arguments or theories that "could have supported a state court's decision." *See Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2557 (2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). One rule applies to all state prisoners' petitions adjudicated on the merits: the petitioner must show that the state court's decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Even when a state court does not explicitly address a petitioner's claims on the merits, a Section 2254 petitioner must satisfy a demanding standard to obtain habeas relief. When a state court gives no reason for denying a petitioner's habeas claim, a rebuttable presumption arises that the state court adjudicated the claim on the merits under Section 2254(d). *See Richter*, 562 U.S. at 99. And a federal habeas court's obligation to consider arguments or theories that could support a state court's decision extends to state-court decisions that offer no reasoning at all. *See Sexton*, 138 S. Ct. at 2557.

If a state court denies a petitioner's habeas claim solely on a procedural ground, then Section 2254(d)'s deferential standard does not apply, *see Visciotti v. Martel*, 862 F.3d 749, 760 (9th Cir. 2016), but the petitioner faces another hurdle: if the state court's decision relies on a state procedural rule that is "firmly established and regularly followed," the petitioner has procedurally defaulted on his claim and cannot pursue habeas relief in federal court unless he shows that the federal court should excuse his procedural default. *See Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016); *accord Runningeagle v. Ryan*, 825 F.3d 970, 978-79 (9th Cir. 2016). If

the petitioner has not pursued his habeas claim in state court at all, the claim is subject to dismissal for failure to exhaust state-court remedies. *See Murray*, 882 F.3d at 807.

If obtaining habeas relief under Section 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has put it, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id.* at 103 (citation omitted). Our habeas review authority serves as a "guard against *extreme* malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (emphasis added).

Here, petitioner raises seven habeas claims: (1) discriminatory use of peremptory challenges; (2) prejudicial error by failing to instruct on a lessor included offense; (3) prejudicial error by instructing jury it could consider his failure to deny or explain evidence when determining guilt; (4) enhancements given on counts not included in the accusatory pleading; (5) enhancements given when jury found that self defense was founded; (6) cruel and unusual punishment; and (7) erroneous sentencing. ECF No. 1 at 2. The Court of Appeal rejected these claims on the merits in a reasoned opinion. The California Supreme Court summarily denied review.

**A.** ***Batson*** **challenge**

The prosecutor in petitioner's case used peremptory challenges to exclude four Hispanic jurors, A.R., S.L., P.S., and G.L.[2] Petitioner's counsel objected, arguing that the prosecutor was excluding these jurors because of their race. The prosecutor responded that he was excluding the four prospective jurors for reasons unrelated to race: A.R. lacked life experience and had a brother with a history of methamphetamine use and a recent conviction on a gang-related offence; S.L. similarly lacked life experience and had a criminal record; P.S. had an

---

[2] The Court of Appeal and the parties refer to jurors by their initials, and we adopt the same approach.

6

uncle and a father with criminal records; and G.L. had children of similar age to the parties in the case and did not appear to have the intellectual aptitude for jury service. The trial court found that the prosecutor was not excluding these jurors because of their race. The Court of Appeal affirmed the conviction, reasoning that substantial evidence supported the trial court's finding, and the California Supreme Court summarily denied review. In this habeas proceeding, petitioner claims denial of equal protection under the Fourteenth Amendment, arguing that the government's proffered reasons for excluding A.R., S.L., P.S., and G.L. were merely pretextual.

Purposeful racial or ethnic discrimination in jury selection denies the equal protection guaranteed by the Fourteenth Amendment, and a criminal defendant can bring a *Batson* motion against an ethnically-motivated peremptory challenge. *See Batson v. Kentucky*, 476 U.S. 79, 84 (1986); *United States v. Mikhel*, 889 F.3d 1003, 1028 (9th Cir. 2018). A court assesses a *Batson* challenge in three steps. *See Mikhel*, 889 F.3d at 1028. First, a criminal defendant must show a prima facie case that the government used a peremptory challenge because of a prospective juror's race. *See id*. Second, if the defendant carries that initial burden, the burden shifts to the government to offer a neutral reason for excluding the prospective juror in question. *See id*. Third, the court decides whether the defendant has shown purposeful racial discrimination. *See id*. The defendant bears the ultimate burden of persuasion to show purposeful discrimination. *See Sifuentes v. Brazelton*, 825 F.3d 506, 515 (9th Cir. 2016).

Here, we assume, without deciding, that petitioner has carried his initial burden of showing a prima facie case that the prosecutor in his case used peremptory challenges to exclude A.R., S.L., P.S., and G.L. because of their Hispanic race or ethnicity. No party disputes that the bases for juror exclusion provided by the government are potential race-neutral justifications for exclusion. We therefore proceed to the third step of the *Batson* analysis and assess whether petitioner has carried his ultimate burden of showing purposeful discrimination.

Finding purposeful racial discrimination at the third step of the *Batson* analysis requires the court to evaluate the prosecutor's credibility. *See Sifuentes*, 825 F.3d at 515. The court

must consider whether the prosecutor's stated reasons for excluding the juror are genuine and not pretexts designed to hide purposeful discrimination. *See Mikhel*, 889 F.3d at 1029. An inference of pretext may arise when the reasons are implausible, not supported by the record, or fantastic. *See Sifuentes*, 825 F.3d at 516. The court will also consider "subtle impressions" that the court has observed and other intangible factors to assess the prosecutor's credibility. *Sifuentes*, 825 F.3d at 515.

One way to show pretext is through a comparison of excluded and non-excluded jurors. For example, if the stated reasons for excluding an African American juror apply equally to a Caucasian juror, the prosecutor's choice not to exclude the Caucasian juror makes purposeful discrimination more likely. *See id*. at 515-16. On the other hand, if a different treatment of jurors resulted from an honest mistake, the prosecutor might yet be credible. *See Aleman v. Uribe*, 723 F.3d 976, 982 (9th Cir. 2013). The prosecutor need only provide reasons that "should be believed," and those reasons need not show "sound strategic judgment." *Id.* The prosecutor's credibility is a "pure issue of fact." *Sifuentes*, 825 F.3d at 515.

In a habeas case, we are particularly reluctant to overturn a credibility determination affirmed by a state appellate court. On direct appeal, an appellate court will affirm a trial court's credibility determination "unless it is clearly erroneous," meaning that the trial court's decision must leave the appellate court with a "definite and firm conviction that a mistake has been committed." *Id*. On habeas review, a federal court "may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Id*. at 517. Considering these deferential standards together results in a "doubly deferential" standard: "unless the state appellate court was objectively unreasonable in concluding that a trial court's credibility determination was supported by substantial evidence, we must uphold it." *Id.* at 518. The record must "compel" the rejection of the prosecutor's race-neutral reasons and leave "no permissible alternative"—not one. *See Rice v. Collins*, 546 U.S. 333, 341 (2006).

Here, petitioner contends that the prosecutor's stated reasons for excluding A.R., S.L., P.S., and G.L. were pretextual. Petitioner asserts that the prosecutor only struck four Hispanic

jurors and no others, and that the stated reasons for the strikes were the same reasons that applied to other non-Hispanic jurors. *See* ECF No. 1 at 5.

Petitioner's arguments do not provide us with a basis for overturning the state court's credibility determination; the record supports the finding that the prosecutor did not exclude A.R., S.L., P.S., and G.L. because of race. The panel of jurors contained many Hispanic people, and other Hispanic jurors remained on the panel. Furthermore, while some non-Hispanic jurors that were not struck were young or had children similar in age to the parties, none had the families with criminal histories like those of A.R., S.L., or P.S. had. And none had G.L.'s difficulty understanding questions or otherwise exhibited G.L.'s apparent lack of intellectual aptitude.

In sum, a reasonable jurist could find that the prosecutor excluded A.R., S.L., P.S., and G.L. for race-neutral reasons. Petitioner has not satisfied the stringent requirement under Section 2254, so the court cannot grant him habeas relief on this basis.

### B. Jury Instructions

#### 1. Failure to Instruct on Involuntary Manslaughter

Petitioner argues that the trial court should have instructed on involuntary manslaughter, in addition to voluntary manslaughter, as a lesser included offense of murder. Petitioner made this argument before the California Court of Appeal, which rejected it on the merits. Habeas relief is unwarranted for four reasons. First, to the extent that petitioner claims that the trial court erred under California law in refusing to instruct the jury on involuntary manslaughter, that claim is not cognizable on federal habeas review. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see also* 28 U.S.C. § 2254(a). Habeas relief is not available for an alleged error in the interpretation or application of state law. *See Estelle*, 502 U.S. at 68, 112 S.Ct. 475.

Second, petitioner had no constitutional right to have the jury instructed on any lesser included offense to murder. "Under the law of [the Ninth Circuit], the failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal

constitutional question." *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998). Accordingly, petitioner's claim that the trial court erred in refusing to instruct the jury on involuntary manslaughter is not cognizable on federal habeas review.

Third, petitioner's claim lacks support in Supreme Court precedent. The United States Supreme Court has never held that a trial court's failure to instruct on a lesser included offense in a non-capital case violates due process of law. Rather, the Supreme Court has held only that a defendant has a constitutional right to have the jury instructed on lesser included offenses in capital cases. *Beck v. Alabama*, 447 U.S. 625, 638 (1980). In so holding, the Supreme Court expressly declined to state whether that right extended to non-capital cases. *Id.* at 638 n.14; *see also Gilmore v. Taylor*, 508 U.S. 333, 361-62 (1993) (Blackmun, J., dissenting) (observing that *Beck* left open question of whether due process entitles criminal defendants in non-capital cases to have jury instructed on lesser included offenses). Therefore, the court of appeal's decision cannot be said to be contrary to, or an unreasonable application of, federal law as decided by the Supreme Court. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) (reasoning that if Supreme Court precedent gives no clear answer to question presented, "it cannot be said that the state court unreasonably applied clearly established Federal law") (internal citations and quotation marks omitted).

Finally, even assuming error, there is little, if any, reason to believe that the lack of the requested instructions had a substantial and injurious effect on the jury's verdict or the trial proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (setting forth harmless error standard applicable to criminal trial constitutional errors). The petitioner "deliberately engaged in a type of aggravated assault the natural consequences of which are dangerous to human life," and thus there is no duty for the court to instruct on involuntary manslaughter under California law, and no basis for the jury to find petitioner's actions amounted to involuntary manslaughter. *See Beard*, 2015 WL 5682328, at *9. There is, therefore, no reason to believe that the lack of instructions regarding involuntary manslaughter had a substantial and injurious impact on the trial proceedings or the jury's verdict. Accordingly, the court of appeal's rejection of petitioner's instructional error claim for involuntary manslaughter was

neither an unreasonable application of, nor contrary to, clearly established federal law as determined by the Supreme Court.

### 2. CALCRIM No. 361 Instruction

On direct appeal, petitioner argued that the trial court erred by instructing the jury:

> If Jarrad Beard failed in his testimony to explain or deny any evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt. If Jarrad Beard failed to explain or deny, it is up to you to decide the meaning and importance of that failure.

*Beard*, 2015 WL 5682328, at *11. Petitioner asserts that he fully testified during the trial, and so this instruction was not warranted. Petitioner has not shown that he is entitled to federal habeas relief; he does not identify a relevant Supreme Court holding or develop an argument supporting his claim.

Petitioner has not shown that the Court of Appeal's decision is contrary to clearly established federal law. As the Court of Appeal explained, the CALCRIM No. 361 instruction may be used when a defendant fails to explain inculpatory evidence or gives an implausible explanation. *See Beard*, 2015 WL 5682328, at *11-12. Petitioner's testimony about how the shootings occurred contradicted the trajectories of the bullets and other forensic evidence. *See id.* at *12. Thus, a reasonable juror could have interpreted petitioner's testimony on the subject as implausible. *See id.* Petitioner has not shown that the Court of Appeal's decision is unreasonable under Section 2254(d); he has not articulated any basis for federal habeas relief.

### C. Firearm Enhancements

Petitioner challenges the firearm enhancements of his sentence under Cal. Penal Code § 12022.5(a), arguing that the trial court erred in applying the enhancements because the enhancements were not expressly pleaded in the information and he did not waive his right to notice on the charges. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation." Thus, "[a] defendant's right to notice of the charges

against which he must defend is well established." *Gray v. Netherland*, 518 U.S. 152, 168 (1996). However, as explained by the Court of Appeal, the enhancement was a lesser included offense, given the facts alleged in the information. *See Beard*, 2015 WL 5682328, at *13 ("'Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.'" (quoting *People v. Birks*, 19 Cal. 4th 108, 117 (1998))). It is undisputed that petitioner's use of firearms facilitated his voluntary manslaughter crimes. Thus, petitioner has not shown that the information was constitutionally deficient because he had notice of the elements and factual circumstances underlying the firearms enhancement.

### D. Sentencing

#### 1. Cruel and Unusual Punishment

At the time of the offenses, petitioner was a nineteen-year-old with no criminal history. The trial court sentenced him to 34 years, the maximum sentence allowed by law. The Court of Appeal upheld the decision, which was challenged under a theory of ineffective assistance of counsel because no objections were made at the sentencing hearing. *See Beard*, 2015 WL 5682328, at *14. The Eighth Amendment's prohibition against cruel and unusual punishment applies when a sentence is "grossly disproportionate" to a crime in severity. *Ewing v. California*, 538 U.S. 11, 21 (2003). Petitioner has not provided, and we cannot find, any case law suggesting that a 34-year sentence is so grossly disproportionate to the offense conduct as to violate the Constitution.

#### 2. Erroneous Sentencing Factors

Petitioner argues that the trial court should have considered mitigating factors—of remorse and reasoning for his actions—to give him less than the maximum sentence. Ordinarily, "violations of state law are not cognizable on federal habeas review." *Rhoades v. Henry*, 611 F.3d 1133, 1142 (9th Cir. 2010). Absent an error "so arbitrary or capricious as to constitute an independent due process . . . violation," *Lewis v. Jeffers*, 497 U.S. 764, 780

(1990), a federal court will not grant habeas relief on an issue of state law, *Smith v. Ryan*, 823 F.3d 1270, 1282 n.8 (9th Cir. 2016). Like the cruel and unusual punishment claim, petitioner's challenge regarding sentencing factors was denied on the merits by the Court of Appeal. State law allows courts to impose an upper term based solely on one aggravating factor. *See Beard*, 2015 WL 5682328, at *14. Even if the court had committed an error by failing to consider a mitigating factor, that error would be harmless because the court conducted an extensive review of the aggravating and mitigating factors at the sentencing hearing. *See Murray*, 882 F.3d at 816 (finding harmless error with respect to petitioner's "troubled childhood" as a mitigating factor because it "does not raise a reasonable likelihood that fuller consideration of that relatively minor factor would have led . . . to a different conclusion").

**E. Ineffective Assistance of Counsel**

Petitioner contends that he received ineffective assistance of counsel in violation of the Sixth Amendment because his trial counsel (1) failed to argue against the firearm enhancement, and (2) failed to object to the sentence.[3] Petitioner raised these arguments in his appeal, the Court of Appeal denied them on the merits, and the California Supreme Court summarily denied review. In this habeas proceeding, petitioner repeats the same arguments.

A "doubly" deferential standard governs a federal habeas petitioner's claim of ineffective assistance of counsel. *See id*. at 105. On direct appeal, the two-step inquiry from *Strickland v. Washington* guides the analysis for an ineffective-assistance-of-counsel claim. *See* 466 U.S. 668, 687 (1984). First, a criminal defendant must show some deficiency in performance by counsel that is "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id*. Second, the defendant must show that the deficient performance caused him prejudice; this requires him to show "that counsel's errors were so serious as to deprive [the petitioner] of a fair trial." *Id*. On habeas review, coupled with

---

[3] Petitioner also alleges that his appellate counsel failed to pursue his petition for coram nubis on appeal. This claim is wholly without merit as coram nubis petitions may only be pursued after petitioner has served his sentence. *See Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994) ("The writ of error coram nobis affords a remedy to attack an unconstitutional or unlawful conviction in cases when the petitioner already has fully served a sentence.").

13

Section 2254(d)'s fairminded-jurist standard, the *Strickland* requirements become even more deferential: The question is "whether there is *any* reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105 (emphasis added). That is, if there is even *one* reasonable argument that counsel did not violate the *Strickland* standard—even if the state court has not identified the argument—then the petitioner cannot obtain habeas relief. *See id*. at 106.

Here, petitioner has failed to satisfy the daunting *Strickland* requirements on habeas review. Neither of the two alleged errors—failure to argue against the firearm enhancement and failure to object at sentencing—satisfies the first prong of *Strickland*, deficient performance. As discussed above, the firearm enhancement was appropriate in this case and so was the sentence. Trial counsel's performance was not deficient for failing to make arguments that would only have served to waste the court's time and not have any impact on petitioner's conviction or sentence.

## III. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made a substantial showing of the denial of a constitutional right. Thus, we decline to issue a certificate of appealability.

**IV. Order**

1. The petition for a writ of habeas corpus, ECF No. 1, is denied.
2. The court declines to issue a certificate of appealability.
3. The clerk of court is directed to enter judgment in favor of respondent and close the case.

IT IS SO ORDERED.

Dated: <u>May 13, 2019</u>

UNITED STATES MAGISTRATE JUDGE

No. 204